Law Offices of
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, New York  10178
(212) 309-6000
<u>*Attorneys for Defendant*</u>

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x

| | |
|---|---|
| JOHN GUGLIELMO and CRAIG WILHELMY. | : |
| on behalf of themselves, individually, | : |
| and on behalf of all others similarly situated, | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | :        15-CV-3117 (ADS) |
| | : |
| THE CHEESECAKE FACTORY RESTAURANTS, INC., | : |
| | : |
| Defendant. | : |

---------------------------------------------------------------------x

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO**
<u>**COMPEL ARBITRATION AND TO STRIKE OR MODIFY CLASS DEFINITION**</u>

MORGAN, LEWIS & BOCKIUS LLP
Sam S. Shaulson
Christopher A. Parlo
Leni D. Battaglia

101 Park Avenue
New York, NY 10178
Tel.: (212) 309-6000
Fax: (212) 309-6001

*Attorneys for Defendant*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................... 1

FACTUAL BACKGROUND ....................................................................................... 2

ARGUMENT ............................................................................................................. 5

I.      STRONG PUBLIC POLICY REQUIRES THAT ARBITRATION PROVISIONS
        BE ENFORCED, AND ANY DOUBTS ABOUT WHETHER A MATTER
        SHOULD BE ARBITRATED MUST BE RESOLVED IN FAVOR OF
        ARBITRATION. ................................................................................................. 5

II.     MOTYKA SHOULD BE COMPELLED TO ARBITRATE HIS CLAIMS. .................. 8

        A.      A MOTION TO COMPEL IS THE PROPER ACTION WHEN A
                LITIGANT REFUSES TO PROCEED IN ARBITRATION. ............................... 8

        B.      UNDER THE TEST FOR ARBITRABILITY IN THIS CIRCUIT,
                MOTYKA MUST ARBITRATE HIS CLAIMS. .................................................. 8

                1.      Motyka Agreed To Arbitrate His Claims ............................................. 9

                2.      Motyka's Claims Clearly Fall Within the Scope Of The Arbitration
                        Agreement. ........................................................................................... 9

        C.      NO GROUNDS EXIST AT LAW OR IN EQUITY FOR NOT
                ENFORCING THE ARBITRATION AGREEMENT ........................................ 11

                1.      Parties May Agree to Arbitrate Wage and Hour Claims. .................... 11

                2.      The Class And Collective Action Waiver Is Enforceable. ..................... 12

        D.      DISMISSAL, RATHER THAN A STAY, IS PROPER BECAUSE ALL
                OF MOTYKA'S CLAIMS ARE SUBJECT TO INDIVIDUAL
                ARBITRATION. ............................................................................................. 13

III.    AS PUTATIVE CLASS MEMBERS HIRED AFTER MAY 1, 2013 ARE
        SUBJECT  TO AN ARBITRATION AGREEMENT WHICH CONTAINS A
        CLASS AND  COLLECTIVE ACTION WAIVER, THE COURT SHOULD
        STRIKE AND/OR  MODIFY THE CLASS AND COLLECTIVE ACTION
        DEFINITIONS ................................................................................................ 14

        A.      COURTS HAVE DISCRETION TO DEFINE AND REDEFINE
                CLASSES, INCLUDING BY STRIKING AND/OR MODIFYING A
                CLASS OR COLLECTIVE ACTION DEFINITION. ........................................ 14

        B.      THE CLASS AND COLLECTIVE ACTION DEFINITIONS SHOULD
                BE STRICKEN OR MODIFIED BECAUSE THEY INCLUDE
                INDIVIDUALS WHO COULD NOT BRING OR PARTICIPATE IN
                CLAIMS IN THIS ACTION. ............................................................................ 15

**TABLE OF CONTENTS**
(continued)

**Page**

C.   THE CLASS AND COLLECTIVE ACTION DEFINITIONS SHOULD
BE STRICKEN OR MODIFIED BECAUSE THE NAMED PLAINTIFFS
DO NOT HAVE STANDING TO REPRESENT INDIVIDUALS WHO
COULD NOT BRING CLAIMS OR PARTICIPATE IN THIS ACTION........ 19

CONCLUSION.................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*,
    307 F.3d 24 (2d Cir. 2002)..................................................................................9

*Adkins v. Labor Ready, Inc.*,
    303 F.3d 496 (4th Cir. 2002) .....................................................................11, 12

*Akpan v. Bank of Am., N.A.*,
    No. 04-cv-1544, 2004 U.S. Dist. LEXIS 28256 (D. Md. Sept. 27, 2004)...........13

*Am. Gen. Life & Accident Ins. Co. v. Wood*,
    429 F.3d 83 (4th Cir. 2005) .............................................................................11

*Arrigo v. Blue Fish Commodities, Inc.*,
    704 F. Supp. 2d 299 (S.D.N.Y. 2010), *aff'd*, 408 F. App'x 480 (2d Cir. 2011).....................11

*AT&T Mobility LLC v. Concepcion*,
    131 S. Ct. 1740 (2011).................................................................................5, 6

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986).....................................................................................5, 7

*Augustyniak v. Lowe's Home Ctr., LLC*,
    No. 14-CV-00488, 2015 WL 1964382 (W.D.N.Y. May 1, 2015)........................15

*Bar-Ayal v. Time Warner Cable Inc.*,
    No. 03-9905, 2006 WL 2990032 (S.D.N.Y. Oct. 16, 2006)...............................13

*Chisolm v. TranSouth Fin. Corp.*,
    194 F.R.D. 538 (E.D. Va. 2000) ........................................................................14

*Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*,
    252 F.3d 707 (4th Cir. 2001) .............................................................................13

*Circuit City Stores, Inc. v. Adams*,
    532 U.S. 105 (2001).........................................................................................9

*Cohen v. UBS Fin. Servs., Inc.*,
    No. 14-781-CV, 2015 WL 3953348 (2d Cir. June 30, 2015) ..........................12, 13

*CompuCredit Corp. v. Greenwood*,
    132 S. Ct. 665 (2012).....................................................................................5, 9

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
   502 F.3d 91 (2d Cir. 2007)........................................................................19

*Cruz v. Cingular Wireless, Inc.*,
   648 F.3d 1205 (11th Cir. 2011) ................................................................12

*Davis Vision, Inc. v. Maryland Optometric Ass'n*,
   187 Fed. Appx. 299 (4th Cir. 2006)...........................................................19

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985)....................................................................................8

*Diaz v. Residential Credit Solutions, Inc.*,
   297 F.R.D. 42 (E.D.N.Y. 2014) (Spatt, J.)...........................................14, 15

*Drews Distrib., Inc. v. Silicon Gaming, Inc.*,
   245 F.3d 347 (4th Cir. 2001) ....................................................................10

*duPont v. Perot*,
   59 F.R.D. 404 (S.D.N.Y. 1973) .................................................................18

*Evancho v. Sanofi-Aventis U.S. Inc.*,
   No. 07-2266, 2007 WL 4546100 (D.N.J. Dec. 19, 2007).........................16

*Foster v. Ctr. Twp. of LaPorte Cnty.*,
   798 F.2d 237 (7th Cir. 1986) ....................................................................20

*Genesco, Inc. v. T. Kakiuchi & Co.*,
   815 F.2d 840 (2d Cir. 1987).........................................................................7

*Gilmer v. Interstate/Johnson Lane Corp.*,
   500 U.S. 20 (1991)...............................................................................11, 12

*Gold v. Deutsche Aktiengesellschaft*,
   365 F.3d 144 (2d Cir. 2004).........................................................................9

*Greeley v. KLM Royal Dutch Airlines*,
   85 F.R.D. 697 (S.D.N.Y. 1980) .................................................................18

*Green Tree Fin. Corp. v. Bazzle*,
   539 U.S. 444 (2003)......................................................................................6

*Guglielmo, et al., v. The Cheesecake Factory, Inc.*,
   No. 15-cv-3117 (E.D.N.Y.) ................................................................. passim

*Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*,
   246 F.3d 219 (2d Cir. 2001).........................................................................6

*In re Initial Pub. Offering Sec. Litig.*,
 No. 21 MC 92, 2008 WL 2050781 (S.D.N.Y. May 13, 2008) ...............................................20

*In re Titanium Dioxide Antitrust Litig.*,
 962 F. Supp. 2d 840 (D. Md. 2013) .............................................................................16, 17

*Int'l Ass'n of Machinists & Aerospace Workers v. Gen. Elec. Co.*,
 406 F.2d 1046 (2d Cir. 1969)...........................................................................................7

*Jones v. Genus Credit Mgmt. Corp.*,
 353 F. Supp. 2d 598 (D. Md. 2005) ...............................................................................10

*Levin v. Alms & Assocs., Inc.*,
 634 F.3d 260 (4th Cir. 2011) ...........................................................................................6

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
 350 F.3d 1018 (9th Cir. 2003) ........................................................................................20

*Mazzei v. Money Store*,
 288 F.R.D. 45 (S.D.N.Y. 2012) ......................................................................................14

*Melong v. Micronesian Claims Com'n*,
 643 F.2d 10 (D. C. Cir. 1980) ........................................................................................19

*Metzler v. Harris Corp.*,
 No. 00-5844, 2001 WL 194911 (S.D.N.Y. Feb. 26, 2001).................................................11

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
 460 U.S. 1 (U.S. 1983).....................................................................................................6

*O'Connor, et al., v. Uber Technologies, Inc.*,
 No. 3:13-cv-03826 (N.D. Cal. Sept. 1, 2015) ...................................................................18

*Pablo v. ServiceMaster Global Holdings Inc.*,
 No. C 08–03894, 2011 WL 3476473 (N.D. Cal. Aug. 9, 2011)..........................................17

*Pennsylvania Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*,
 713 F. Supp. 2d 734 (N.D. Ill. 2010) ..............................................................................19

*Pleasants v. Am. Express Co.*,
 541 F.3d 853 (8th Cir. 2008) ..........................................................................................12

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
 388 U.S. 395 (1967).......................................................................................................10

*Rahman v. Smith & Wollensky Rest. Grp., Inc.*,
 No. 06 CIV.6198, 2008 WL 161230 (S.D.N.Y. Jan. 16, 2008).....................................17, 20

*Renton v. Kaiser Found. Health Plan*,
   No. C00–5370RJB, 2001 WL 1218773 (W.D. Wash. Sept. 24, 2001) ..................................17

*Richardson v. Byrd*,
   709 F.2d 1016 (5th Cir.1983) ..................................................................................................14

*S.A. Mineracao Da Trindade-Samitri v. Utah Int'l, Inc.*,
   745 F.2d 190 (2d Cir. 1984)......................................................................................................7

*Scherk v. Alberto-Culver Co.*,
   417 U.S. 506 (1974)...................................................................................................................8

*Shearson/Am. Express, Inc. v. McMahon*,
   482 U.S. 220 (1987).................................................................................................................12

*Simel v. JP Morgan Chase*,
   No. 05 CV 9750, 2007 WL 809689 (S.D.N.Y. Mar. 19, 2007)...............................................20

*Spread Enterprises, Inc. v. First Data Merch. Servs. Corp.*,
   298 F.R.D. 54 (E.D.N.Y. 2014) (Spatt, J.)..............................................................................15

*Sutherland v. Ernst & Young LLP*,
   726 F.3d 290 (2d Cir. 2013)............................................................................................. passim

*Transp. Workers Union of Am. v. Veolia Transp. Servs., Inc.*,
   24 F. Supp. 3d 223 (E.D.N.Y. 2014) .........................................................................................7

*Tsaldilas v. Providian Nat'l Bank*,
   13 A.D.3d 190 (1st Dep't 2004) ..............................................................................................13

*Wire Serv. Guild v. United Press Int'l, Inc.*,
   623 F.2d 257 (2d Cir. 1980)......................................................................................................7

**STATUTES**

9 U.S.C. § 2.................................................................................................................................9

29 U.S.C. §§ 201, *et seq.*...........................................................................................................2

9 U.S.C. § 1, et seq. ("FAA") ...............................................................................................1, 4, 5

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6).............................................................................................................5

Fed. R. Civ. P. 23(d)(1)(D) ...........................................................................................14, 15, 17

## PRELIMINARY STATEMENT

Defendant The Cheesecake Factory Restaurants, Inc. ("CCF" or "Defendant") respectfully submits this memorandum of law in support of its motion, filed under the Federal Arbitration Act, to compel arbitration of the claims of opt-in Plaintiff Thomas Motyka ("Motyka"), who signed an Arbitration Agreement requiring him to arbitrate his claims on an individual basis.  Defendant also moves to strike, or in the alternative, to modify the class definition, which, unless stricken or modified improperly includes individuals who are required to arbitrate their claims on an individual basis and who may not participate in this action.

Plaintiff Motyka is a former server who was most recently hired on November 1, 2013.  As a server, Motyka was responsible for interacting with guests and ensuring that they have an enjoyable dining experience.  Upon the commencement and as a condition of his employment, Motyka executed a mutual agreement to arbitrate claims.  ("Arbitration Agreement" or "Agreement").  A copy of Mr. Motyka's Arbitration Agreement is attached to the Declaration of Laurie Lambert-Gaffney (the "Lambert-Gaffney Decl.") as Exhibit 1.  This agreement explicitly covers claims involving "wages or other compensation or benefits," and includes a waiver barring individuals from bringing or pursuing covered claims in a class or collective action.  *Id.* at p. 3 ("The Company and I agree that we must bring all claims covered by this Agreement against the other Party only in the Parties' individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding.").

Despite this clear agreement to pursue any wage claims through arbitration, and not in any class, collective or representative proceeding, Motyka has now filed a consent form to join, as a party plaintiff, the action initially filed by Plaintiffs John Guglielmo and Craig Wilhelmy, *Guglielmo, et al., v. The Cheesecake Factory, Inc.*, No. 15-cv-3117 (E.D.N.Y.) (the "Guglielmo Litigation").  *See* Complaint and Amended Complaint at Docket ("Dkt.") Nos. 1 & 26 (the

Complaint was amended to include retaliation claims specific to Named Plaintiff Guglielmo); and Consent Form at Dkt No. 10.  In the Guglielmo Litigation Amended Complaint (the "Amended Complaint"), the named plaintiffs allege that Defendant failed to pay them minimum wages and overtime in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and that Defendant made wage deductions and failed to pay minimum wages, overtime, spread of hours pay, and call-in pay in violation of the New York Labor Law ("NYLL").  The named plaintiffs seek to proceed as both a collective action and as a class action, on behalf of themselves and a putative class consisting of allegedly similarly situated wait-staff employees, including bartenders, servers, waiters, and bussers who worked for Defendant.  *See* Class and collective action definitions in the Amended Complaint at ¶¶ 16, 22.

As demonstrated below, however, the Court should compel arbitration of all of Motyka's claims pursuant to his Arbitration Agreement, and which includes an express class and collective action waiver.  Further, the Court should strike or modify the class definitions as they improperly include the claims of putative class members hired on or after May 1, 2013, who were required to submit their claims to arbitration and waived the ability to participate in a class or collective action.  Additionally, because Motyka must pursue his claims through arbitration, there is no individual plaintiff with standing to represent putative class members hired on or after May 1, 2013.  For this additional reason, the class definition should be stricken or modified to exclude these individuals.

## FACTUAL BACKGROUND

The named plaintiffs and each putative opt-in plaintiff are current or former servers at Cheesecake Factory restaurants in New York state.  The named plaintiffs purport to represent all servers, bartenders, waiters, bussers, or other members of the wait-staff employed by Defendant during the six year period preceding the filing of this action on May 28, 2015.  Amended Complaint ¶¶ 16-22.  However, each employee hired on or after May 1, 2013, like Motyka, was required, as a condition of employment, to arbitrate covered claims that they had on an individual basis.  Lambert-Gaffney Decl. at ¶ 6.  The Arbitration Agreement sets forth the terms and conditions governing the resolution of numerous covered claims, including:

> **claims for wages or other compensation or benefits** and/or for payments, penalties, interest, and/or liquidated damages related thereto (including, but not limited to claims for non-payment, under-payment, or incorrect payment of wages, overtime, commissions, bonuses, severance, employee fringe benefits, stock options, payments for missed breaks, payments for late final pay, payments relating to itemized wage statements, associated penalties, and the like), whether such claims are pursuant to alleged express or implied contract or obligation, equity, or any federal, state, or municipal laws concerning wages, compensation or employee benefits including but not limited to claims under the Fair Labor Standards Act of 1938, the Equal Pay Act of 1963, and other applicable federal, state and municipal statutes, regulations or ordinances.

Arbitration Agreement at p. 2 (emphasis added).  The Arbitration Agreement also makes clear that by entering into the Agreement, the employee is waiving the right to bring or to participate in a court action for covered claims.  Specifically, the Arbitration Agreement states:

> The Company and I understand and agree that the arbitration of disputes and claims under this Agreement shall be in lieu of a court trial before a judge and/or a jury. **The Company and I understand and agree that, by signing this Agreement, we are expressly waiving any and all rights to a trial before a judge and/or a jury regarding any disputes and claims which we now have or which we may in the future that are subject to arbitration under this Agreement.** We also understand and agree that the arbitrator's decision will be final and binding on both Parties, subject to confirmation and review on the grounds set forth in the FAA.

*Id.* at p. 1 (emphasis in original).

Motyka, and every other putative class member hired on or after May 1, 2013, also agreed to waive participation in any class action and to proceed *only* on an individual basis, unless the individual affirmatively opted out of that obligation. Lambert-Gaffney Decl. at ¶¶ 6-7. In that regard, the Arbitration Agreement states:

> With respect to the claims covered by this Agreement, the Parties expressly waive any right to submit, initiate, or participate in a representative capacity or as a plaintiff, claimant or member in a class action, collective action, or other representative or joint action, regardless of whether the action is filed in arbitration or in court. There shall be no right or authority for any dispute to be brought, heard, joined on a class, collective, or representative basis and the Parties' claims against each other may not be consolidated or joined in arbitration with the claims of other persons or individuals who may be similarly situated or have similar disputes.

*Id.* at p. 3 (emphasis added). With his signature, Motyka confirmed that he read the entire Arbitration Agreement, understood its terms, had been given the opportunity to and had been advised to discuss the agreement with his private legal counsel, and that he entered the Agreement voluntarily. *Id.* at p. 6.

Notwithstanding the foregoing Arbitration Agreement, on or about July 28, 2015, Motyka filed a Consent to Join Collective Action form, through which he is now attempting to litigate in

4

this Court claims that are covered by his Arbitration Agreement.  *See* Dkt. No. 10.  Because the Amended Complaint's allegations revolve entirely around the payment of wages and other compensation, which is expressly included in the Arbitration Agreement as a covered claim, all of Motyka's claims are within the scope of the Arbitration Agreement and must be arbitrated.

Because numerous other putative plaintiffs are subject to the same clear arbitration provision and class and collective action waiver, the class definition which includes them is overly broad and overly inclusive by including individuals who cannot pursue any claim in or obtain any relief from this Court.  As a result, the definition should be stricken, and/or amended in favor of a definition that does not violate the Arbitration Agreement and the Federal Arbitration Act.  This could be done very simply by excluding from the proposed definition any individual hired after May 1, 2013.

## ARGUMENT

Pursuant to Fed. R. Civ. P. 12(b)(6) and the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"), Motyka's claims should be dismissed, or in the alternative should be stayed, and he should be ordered to submit to arbitration in accordance with the Arbitration Agreement's provisions.  As explained below, his claims fall squarely within the scope of the disputes that the parties agreed would be determined solely by an arbitrator – and not by a court.  Moreover, his claims should be dismissed for the separate reason that he expressly waived his right to bring or participate in a class action against Defendant and agreed to proceed only on an individual basis.

**I.**     **STRONG PUBLIC POLICY REQUIRES THAT ARBITRATION PROVISIONS BE ENFORCED, AND ANY DOUBTS ABOUT WHETHER A MATTER SHOULD BE ARBITRATED MUST BE RESOLVED IN FAVOR OF ARBITRATION.**

As the Supreme Court has continually reiterated, "[t]he principal purpose of the FAA is to ensure that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011) (internal quotation marks omitted).  Section two of the FAA makes arbitration agreements "valid, irrevocable, and enforceable" as written; Section three requires courts to stay litigation of arbitral claims pending arbitration of those claims; and Section four requires courts to compel arbitration in "accordance with the terms of the agreement" upon the motion of either party to the agreement.  *Id.* (citing the FAA).

The Supreme Court and this Court have both interpreted the FAA to reflect a strong public policy favoring arbitration, and any doubts concerning the scope of an arbitration clause or the issues covered by it must be resolved in favor of arbitration.  *See CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012) (noting that the FAA creates a "liberal federal policy" favoring arbitration agreements and that this policy "requires courts to enforce agreements to arbitrate according to their terms."); *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) ("[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute") (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)); *see also Concepcion*, 131 S. Ct. at 1745 (noting that federal policy favors enforcing arbitration agreements and that "courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms" (citations omitted)); *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) ("if there is doubt . . . about the scope of arbitrable issues . . . we should resolve that doubt in favor of arbitration"

6

(internal quotation marks omitted)); *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001) ("There is a strong federal policy favoring arbitration as an alternative means of dispute resolution . . . [i]n accordance with that policy, where, as here, the existence of an arbitration agreement is undisputed, doubts as to whether a claim falls within the scope of that agreement should be resolved in favor of arbitrability"); *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 295 (2d Cir. 2013) (finding that FLSA cases are within the ambit of the "liberal federal policy favoring arbitration agreements" and that Congress had not overridden the FAA's mandate concerning such cases).

Indeed, even when the scope of an arbitration provision is unclear, which is not the case here, courts are to resolve any issue in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (U.S. 1983) (The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration); *Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 266 (4th Cir. 2011) ("The heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration.") (internal quotation marks omitted).

The presumption in favor of requiring arbitration is particularly strong where, as here, an arbitration clause uses broad language pursuant to which the parties agree to arbitrate "*any and all disputes or claims* that arise out of or relate to . . . employment." Arbitration Agreement at p. 1 (emphasis added). *See also AT&T Techs.*, 475 U.S. at 650 (stating that the presumption in favor of arbitrability "is particularly applicable where the clause is as broad as the one employed in this

7

case, which provides for arbitration of 'any differences . . .'"); *Am. Recovery*, 96 F.3d at 93

(concluding that broadly worded arbitration clauses, such as the one at issue, which cover "any

dispute," are "capable of an expansive reach"); *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840,

846 (2d Cir. 1987) ("[i]f the allegations underlying the claims 'touch matters' covered by the

parties' [arbitration agreement], then those claims must be arbitrated, whatever the legal labels

attached to them.") (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S.

614, 624 n. 13 (1985).

     Thus, when the parties agree to a broad arbitration clause – such as that in Motyka's

Arbitration Agreement – there is a "presumption of arbitrability in the sense that an order to

arbitrate the particular grievance should not be denied unless it may be said with positive assurance

that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.

Doubts should be resolved in favor of coverage." *Transp. Workers Union of Am. v. Veolia Transp.

Servs., Inc.*, 24 F. Supp. 3d 223, 228 (E.D.N.Y. 2014) (Spatt, J.); *S.A. Mineracao Da Trindade-

Samitri v. Utah Int'l, Inc.*, 745 F.2d 190, 194 (2d Cir. 1984) (same); *Wire Serv. Guild v. United

Press Int'l, Inc.*, 623 F.2d 257, 260 (2d Cir. 1980) (same); *Int'l Ass'n of Machinists & Aerospace

Workers v. Gen. Elec. Co.*, 406 F.2d 1046, 1048 (2d Cir. 1969) (same). Given this overwhelming

precedent, it is impossible to conclude, or even to argue, that the Arbitration Agreement does not

cover Motyka's wage claims and those of any other putative class member hired after May 1,

2013.

**II.    MOTYKA SHOULD BE COMPELLED TO ARBITRATE HIS CLAIMS.**

    **A.    A MOTION TO COMPEL IS THE PROPER ACTION WHEN A LITIGANT REFUSES TO PROCEED IN ARBITRATION.**

A motion to compel arbitration is governed by Section 4 of the FAA, which provides that "[a] party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  *See also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985) (holding that the FAA leaves no room for the exercise of discretion and mandates that a district court direct the parties to proceed to arbitration on issues within the scope of an arbitration agreement); *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974) ("[Section] 4 of the Act directs a federal court to order parties to proceed to arbitration if there has been a 'failure, neglect, or refusal' of any party to honor an agreement to arbitrate").  When a litigant in a court proceeding refuses to arbitrate a dispute within the scope of a valid arbitration agreement a judicial order compelling arbitration is mandatory.  Despite agreeing to arbitrate any claims, Motyka has opted to join a pending class/collective action as a party plaintiff, an action he expressly agreed not to take.  Accordingly, a judicial order compelling arbitration should be issued.

    **B.    UNDER THE TEST FOR ARBITRABILITY IN THIS CIRCUIT, MOTYKA MUST ARBITRATE HIS CLAIMS.**

"The Second Circuit has established a two-part inquiry for determining the arbitrability of claims arising out of contracts not covered by other federal statutes: '(1) whether the parties agreed to arbitrate disputes at all; and (2) whether the dispute comes within the scope of the arbitration

9

agreement.'" *ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 28 (2d Cir. 2002).  Under this test, the strong federal policy favoring arbitration requires that Motyka be compelled to arbitrate all of his claims.  *CompuCredit Corp.*, 132 S. Ct. at 665.

### 1.    Motyka Agreed To Arbitrate His Claims.

The FAA provides, in relevant part, that "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable and enforceable."  9 U.S.C. § 2 (emphasis added).  *See also Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111-12 (2001); *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 150 (2d Cir. 2004).  It cannot be legitimately disputed that Motyka entered into a valid, irrevocable and enforceable agreement to arbitrate all of his claims in the Amended Complaint, as evidenced by the following language in his Arbitration Agreement:

> The Company and I understand and agree that the Arbitration of disputes and claims under this Agreement shall be in lieu of a court trial before a judge and/or a jury.  **The Company and I understand and agree that, by signing this Agreement, we are expressly waiving any and all rights to a trial before a judge and/or a jury regarding any disputes and claims which we now have or which we may in the future have** . . . .

Arbitration Agreement at p. 1 (emphasis in original).  Accordingly, the first factor – whether the parties agreed to arbitrate – is clearly satisfied.

### 2.    Motyka's Claims Clearly Fall Within the Scope Of The Arbitration Agreement.

The second factor – whether the arbitration agreement covers the dispute at issue – is also easily satisfied here.  Indeed, the Arbitration Agreement is extraordinarily broad, and certainly broad enough to encompass all employment related claims, which are the only claims raised in the

Guglielmo Litigation. *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 296 (2d Cir. 2013) ("Although we have not directly or specifically addressed whether an employee's ability to proceed collectively under the FLSA can be waived in an arbitration agreement, every Court of Appeals to have considered this issue has concluded that the FLSA does not preclude the waiver of collective action claims.  We agree with this consensus among our sister Circuits for multiple reasons.") (internal citations omitted).

Motyka's Arbitration Agreement requires the arbitration of all claims relating to his employment with Defendant, and specifically includes "claims for wages or other compensation or benefits . . . ."  Arbitration Agreement at p. 2.  According to the Second Circuit, "this is precisely the kind of broad arbitration clause that justifies a presumption of arbitrability."  *Sutherland*, 726 F. 3d at 296.

More precisely, all of the claims in the Guglielmo Litigation concern "wages or other compensation or benefits."  Accordingly, those claims are specifically covered by the Arbitration Agreement.  Arbitration Agreement at p. 2.  As such, there can be no good faith dispute that all of Motyka's claims are subject to individual arbitration in accordance with the Arbitration Agreement.  *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 406 (1967) (holding that agreement to arbitrate any controversy or claim arising out of or relating to this Agreement, or breach thereof was "easily broad enough" to encompass the plaintiff's claims); *Drews Distrib., Inc. v. Silicon Gaming, Inc.*, 245 F.3d 347, 350 (4th Cir. 2001) ("In this case, the parties contractually agreed to arbitrate 'any controversy or claim' between them 'arising out of or related to' the Distributor Agreement; that remains their obligation."); *Jones v. Genus Credit Mgmt.*

11

*Corp.*, 353 F. Supp. 2d 598, 602 (D. Md. 2005) ("In any event, the arbitration clause also requires arbitration of 'any dispute between us that cannot be amicably resolved . . . .'").

The second part of the test to determine arbitrability is thus also clearly satisfied.

**C.    NO GROUNDS EXIST AT LAW OR IN EQUITY FOR NOT ENFORCING THE ARBITRATION AGREEMENT**

**1.    Parties May Agree to Arbitrate Wage and Hour Claims.**

As the Second Circuit recently explained, "Supreme Court precedents inexorably lead to the conclusion that the waiver of collective action claims is permissible in the FLSA context." *Sutherland*, 726 F.3d at 297.  In addition to this controlling authority, numerous other courts have reached the same conclusion.  *See, e.g., Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (U.S. 1991)("Although all statutory claims may not be appropriate for arbitration, '[h]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.").  As the FLSA contains no prohibition on the arbitration of claims arising under that statute, courts have routinely required plaintiffs to arbitrate such claims, including on an individual basis.  *See Sutherland*, 726 F.3d at 297; *Arrigo v. Blue Fish Commodities, Inc.*, 704 F. Supp. 2d 299, 304 (S.D.N.Y. 2010) ("The Court therefore concludes that Congress did not intend FLSA claims to be non-arbitrable"), *aff'd*, 408 F. App'x 480 (2d Cir. 2011).

Similarly, NYLL claims may be subject to compulsory arbitration.  *Ciago*, 295 F. Supp. 2d at 334 (compelling plaintiff's NYLL claims to arbitration because "nothing in the NYLL indicat[ed] that the state legislature intended to preclude compulsory arbitration of claims under those provisions"); *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005)

(holding that employee's state law wage claims were arbitrable under valid and enforceable arbitration agreement); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 506 (4th Cir. 2002) (holding that FLSA and state wage claims may be properly resolved in mandatory arbitration proceedings); *Metzler v. Harris Corp.*, No. 00-5844, 2001 WL 194911, at *5 (S.D.N.Y. Feb. 26, 2001) (granting motion to compel arbitration of plaintiff's NYLL claims).

Because the Arbitration Agreement clearly encompasses Motyka's FLSA and NYLL claims, and because there is no statutory provision or expressed legislative intent that such claims are non-arbitrable, this Court should compel Motyka to arbitrate all covered claims.  Should Plaintiffs disagree, it is their burden to prove that Congress/New York State Legislature did not intend for these statutory claims to be arbitrable.  *Gilmer*, 500 U.S. at 26; *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987).  Plaintiffs cannot make that showing.

## 2.     The Class And Collective Action Waiver Is Enforceable.

The Second Circuit recently confirmed that class and collective action waivers covering wage and hour claims are fully enforceable, and that individuals may be barred from litigating in court any class and collective action claims.  *Cohen v. UBS Fin. Servs., Inc.*, No. 14-781-CV, 2015 WL 3953348, at *5 (2d Cir. June 30, 2015) ("Because Cohen waived the right to bring his [wage] claims on a class or collective basis (and because those waivers are enforceable), only his individual claims remain . . . which are clearly covered by the arbitration agreement.  Under the FAA, that agreement can—and therefore must—be enforced."); *Sutherland*, 726 F.3d at 298 (2d Cir. 2013) ("[Plaintiff] is not prevented from effectively vindicating her rights by pursuing arbitration on an individual basis).  Numerous other courts have reached the same conclusion.  *See,*

*e.g.*, *Cruz v. Cingular Wireless, Inc.*, 648 F.3d 1205, 1214 (11th Cir. 2011) (upholding arbitration agreement and class action waiver finding unavailing the argument that the class action waiver would prevent small-value claims from being prosecuted); *Pleasants v. Am. Express Co.*, 541 F.3d 853, 858-59 (8th Cir. 2008) (granting defendant's motion to compel plaintiffs to arbitrate their claims on an individual basis, where the court found that the arbitration and class action waiver provisions of the parties' agreements were not unconscionable); *Adkins*, 303 F.3d at 503 (finding that nothing in the FLSA suggested that "Congress intended to confer a nonwaivable right to a class action under that statute" and thus affirming order dismissing plaintiffs class action complaint and compelling arbitration on an individual basis); *Bar-Ayal v. Time Warner Cable Inc.*, No. 03-9905, 2006 WL 2990032, at *16 (S.D.N.Y. Oct. 16, 2006) (enforcing arbitration provision that eliminated the possibility of bringing a class action); *Tsaldilas v. Providian Nat'l Bank*, 13 A.D.3d 190, 190 (1st Dep't 2004) (enforcing arbitration provision which waived right to bring class action under a New York statute).

Particularly after the Second Circuit's holdings in *Sutherland* and *Cohen*, this Court should similarly uphold the class and collective action waiver to which Motyka and other putative class members agreed.

### D.     DISMISSAL, RATHER THAN A STAY, IS PROPER BECAUSE ALL OF MOTYKA'S CLAIMS ARE SUBJECT TO INDIVIDUAL ARBITRATION.

Because all of Motyka's claims against Defendant are subject to arbitration pursuant to the Arbitration Agreement, his claims should be dismissed rather than stayed.  It is well established that where all claims are subject to a binding arbitration agreement, dismissal – rather than issuance of a stay – is appropriate.  *Poteat*, 91 F. App'x at 835 (remanding the case with

14

instructions to dismiss the action after enforcing arbitration agreement); *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001) ("Notwithstanding the terms of §3 [of the FAA], however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."); *Akpan v. Bank of Am., N.A.*, No. 04-cv-1544, 2004 U.S. Dist. LEXIS 28256, at *7 (D. Md. Sept. 27, 2004) ("[T]his court finds that judicial economy counsels in favor of a dismissal.").  Accordingly, this Court should dismiss Motyka from this case.  *Id.*

III.   **AS PUTATIVE CLASS MEMBERS HIRED AFTER MAY 1, 2013 ARE SUBJECT TO AN ARBITRATION AGREEMENT WHICH CONTAINS A CLASS AND COLLECTIVE ACTION WAIVER, THE COURT SHOULD STRIKE AND/OR MODIFY THE CLASS AND COLLECTIVE ACTION DEFINITIONS.**

   A.   **COURTS HAVE DISCRETION TO DEFINE AND REDEFINE CLASSES, INCLUDING BY STRIKING AND/OR MODIFYING A CLASS OR COLLECTIVE ACTION DEFINITION.**

A District Court has "a duty to ensure that the class is properly constituted and has broad discretion to modify the class definition as appropriate to provide the necessary precision." *Diaz v. Residential Credit Solutions, Inc.*, 297 F.R.D. 42, 54 (E.D.N.Y. 2014) (Spatt, J.) (quoting *Morangelli v. Chemed Corp.*, 275 F.R.D. 99, 114 (E.D.N.Y. 2011); *Mazzei v. Money Store*, 288 F.R.D. 45, 55 (S.D.N.Y. 2012) ("courts have the discretion 'to . . . redefine the class to bring it within the scope of Rule 23[.]' ") (quoting *Cokely v. N.Y. Convention Ctr. Operating Corp.*, No. 00 Civ. 4637, 2004 WL 1152531, at *2 n. 3 (S.D.N.Y. May 21, 2004)) (post-trial decertification granted by *Mazzei v. Money Store*, No. 01 CV. 5694, 2015 WL 3439158, at *18 (S.D.N.Y. May 29, 2015)).  Indeed, there is a wealth of authority supporting the discretion of a district judge to revise class definitions.  *See, e.g., Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir.1983) ("[t]he district judge must define, redefine, subclass, and decertify as appropriate in response to the

15

progression of the case from assertion to facts."); *Chisolm v. TranSouth Fin. Corp.*, 194 F.R.D. 538 (E.D. Va. 2000) (same).

This discretion includes the ability under Fed. R. Civ. P. 23(d)(1)(D) to amend a definition contained in a pleading.  *See* Fed. R. Civ. P. 23(d)(1)(D) ("In conducting an action under this rule, the court may issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons.").

**B.     THE CLASS AND COLLECTIVE ACTION DEFINITIONS SHOULD BE STRICKEN OR MODIFIED BECAUSE THEY INCLUDE INDIVIDUALS WHO COULD NOT BRING OR PARTICIPATE IN CLAIMS IN THIS ACTION.**

Putative class members hired after May 1, 2013 are subject to the same Arbitration Agreement that Motyka executed.  Lambert-Gaffney Decl. at ¶ 6.  The Agreement contains both a requirement that such individuals arbitrate their claims and an express class and collective action waiver that bars such individuals from bringing or participating in any action on a class, collective or representative basis, unless they have opted out of that waiver in writing.  *See supra* at p. 3-4. As stated above, this provision is valid and enforceable.  *See supra* at p. 12-13.  No individual has opted out of this obligation.  Lambert-Gaffney Decl. at ¶ 7.  Accordingly, no individual hired after May 1, 2013 may participate in this action.

Because of these facts, individuals like Motyka are in a fundamentally different position than the named plaintiffs who are not subject to a provision barring them from participating in a class or collective action.  However, unless the class definition is modified it would improperly encompass such individuals.  Therefore, the class definition in the Amended Complaint should be stricken or amended to exclude any individuals hired after May 1, 2013.  *See Diaz*, 297 F.R.D. at

16

54-55 (Spatt, J.) ("[I]n the Court's view, the Plaintiff's proposed class definition is problematic insofar as it is over inclusive . . . . [T]he Court finds that these concerns can be adequately addressed by modifying the Plaintiff's proposed class definition, so as to clearly exclude those individuals that fall outside the class."); *Spread Enterprises, Inc. v. First Data Merch. Servs. Corp.*, 298 F.R.D. 54, 70 (E.D.N.Y. 2014) (Spatt, J.) (explaining that "courts have the discretion to redefine the class to bring it within the scope of Rule 23," and modifying a class definition that created an impermissible fail-safe class); *Augustyniak v. Lowe's Home Ctr., LLC*, No. 14-CV-00488, 2015 WL 1964382, at *6 (W.D.N.Y. May 1, 2015) (rejecting a proposed FLSA settlement and notice form because these documents impermissibly contemplated sending notice to and including in the settlement improper putative class members "who clearly have no valid FLSA claims – including two of the three named plaintiffs"); *Evancho v. Sanofi-Aventis U.S. Inc.*, No. 07-2266, 2007 WL 4546100, at *5 (D.N.J. Dec. 19, 2007) (granting motion to strike class allegations and holding that a plaintiff cannot "bring unnamed parties into federal court" by relying on state wage and hour claims that the court ruled could not be pursued in the federal collective action).

The decision in *In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840 (D. Md. 2013) is directly on point. There, defendants filed a motion to compel arbitration for those putative class members that were subject to an arbitration agreement that, as here, included a class and collective action waiver that "expressly foreclosed their ability to proceed in [the] case." *Id* at 862. Defendants further moved to amend the class definition to exclude these individuals. The court agreed with defendants and granted the motion. The court first explained that "[a]ssuming the

17

arbitration clauses at issue are enforceable, this Court determines that the class members would be equitably estopped from avoiding the arbitration clauses that they signed with [defendants].  In other words, [defendants] can compel the signatory class members to arbitrate their claims with the defendants." *Id.* at 849.

Because these individuals were subject to an arbitration agreement that required them to pursue any claims through arbitration, and were barred from joining the suit, the court then considered the defendants' motion to amend the class definition.  On this point, the court noted that "many of the current class members are subject to contractual provisions that expressly foreclose their ability to proceed in this case." *Id.* at 862.  Because, as here, these "various contractual provisions put certain class members in different legal positions from the rest of the class, *the class definition must be amended*." *Id.* at 861 (emphasis added).  The court ordered that the class definition be amended to contain a carve-out for "those persons" subject to a "contract containing one or more of the following . . . a class action waiver clause, or . . . a provision waiving the right to a jury trial." *Id.* at 863.

This factual situation is nearly identical to the current litigation.  Here, Motyka, and numerous other putative class members, executed binding arbitration agreements that include class and collective action and jury trial waivers.  Those agreements are enforceable and, as the court held in *In re Titanium,* estop such individuals from pursuing any claims in the Guglielmo Litigation.  Accordingly, the class definition should be stricken or modified to exclude these individuals who are unable to join the class.

The result in *In re Titanium* has been repeated in many cases in which courts have held that where a group of individuals has a legal impediment barring them from joining an action their claims cannot be litigated with others in a class, or on a class basis at all.  For example, in *Rahman v. Smith & Wollensky Rest. Grp., Inc.*, No. 06 CIV.6198, 2008 WL 161230, at *3 (S.D.N.Y. Jan. 16, 2008), defendant argued that plaintiff had failed to exhaust his administrative remedies by not raising certain claims to the EEOC and thus, should not be able to assert those claims on behalf of other class members.  The court rejected plaintiffs argument that the motion to amend under Rule 23(d)(1)(D) was premature, holding that "the extent to which the claims of absent members of the putative class have been exhausted is an issue separate and apart from the issues that will be decided on a class certification motion." *Id* at *3.  After explaining why the motion was procedurally proper, the court granted the motion, striking numerous class allegations.  *See also Pablo v. ServiceMaster Global Holdings Inc.*, No. C 08–03894, 2011 WL 3476473, at *3 (N.D. Cal. Aug. 9, 2011) (holding that a class action was not sustainable where litigation would be devoted to determining which portion of putative class signed arbitration agreements); *Renton v. Kaiser Found. Health Plan*, No. C00–5370RJB, 2001 WL 1218773, at *5–6 (W.D. Wash. Sept. 24, 2001) (finding plaintiffs could not maintain a class because of members' varying contractual provisions requiring arbitration or exhaustion of administrative remedies); *Greeley v. KLM Royal Dutch Airlines*, 85 F.R.D. 697, 701 (S.D.N.Y. 1980) (holding that the named plaintiff, who did not sign a release, had diverging interests from individuals that had signed a release and could not adequately represent those putative class members as they were barred from joining the action); *duPont v. Perot*, 59 F.R.D. 404, 411 (S.D.N.Y. 1973) (finding that where a release signed by

19

numerous putative class members barred those individuals from a recovery, they had divergent interests from the named plaintiff who had not signed the release and thus, all putative class members that had signed the release could not be represented in the action); *O'Connor, et al., v. Uber Technologies, Inc.*, No. 3:13-cv-03826 (N.D. Cal. Sept. 1, 2015) (holding that any putative class member who did not timely opt-out of a recently implemented arbitration agreement could not be represented in a class action with individuals who completed a prior version of the agreement).

The same dichotomy is present here, as the question of whether individuals subject to the Arbitration Agreement can assert claims at all is separate from any class certification decisions. As demonstrated herein, the interests of absent individuals hired after May 1, 2013, who are subject to the Arbitration Agreement and class and collective action waiver, materially diverge from those not subject to the Arbitration Agreement.  Therefore, the class definition should be modified to exclude them.

**C.      THE CLASS AND COLLECTIVE ACTION DEFINITIONS SHOULD BE STRICKEN OR MODIFIED BECAUSE THE NAMED PLAINTIFFS DO NOT HAVE STANDING TO REPRESENT INDIVIDUALS WHO COULD NOT BRING CLAIMS OR PARTICIPATE IN THIS ACTION.**

It is a "basic principle that to have standing to sue . . . it is essential that a plaintiff must be a part of that class, that is, he must possess the same interest and suffer the same injury shared by all members of the class . . . .").  *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 101 (2d Cir. 2007) (internal quotations omitted) (emphasis added).  In the present matter, however, neither of the named plaintiffs, nor any opt in other than Motyka, are subject to the Arbitration Agreement implemented on and after May 1, 2013.  Lambert-Gaffney Decl. at ¶ 6.

20

And, for the reasons set forth above, Motyka's claims must be pursued through arbitration.  Thus, there is no remaining individual with standing to represent the interests of the group of putative class members hired after the Arbitration Agreement was implemented – nor can there be, since each party to that Arbitration Agreement is required to bring any claims in arbitration and barred from participating in this case.  *See, e.g.*, *Davis Vision, Inc. v. Maryland Optometric Ass'n*, 187 Fed. Appx. 299 (4th Cir. 2006) (finding that a representative association, who's standing relies directly on the standing of its members, had no standing to bring class litigation because certain of its members were bound by arbitration agreements); *Pennsylvania Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, 713 F. Supp. 2d 734, 745 (N.D. Ill. 2010) (holding that individuals who executed valid arbitration agreements must pursue their claims in arbitration and a representative party could not bring court claims on behalf of individuals bound by the arbitration agreements); *Melong v. Micronesian Claims Com'n*, 643 F.2d 10, 13 (D.C. Cir. 1980) (holding that the signers of a release were barred from joining a lawsuit brought by non-signers, and that non-signers of a release could not adequately represent the signers of the release).  Therefore, the class definition should be stricken, or be ordered to be replead to exclude those who were hired after May 1, 2013 and who cannot participate in this action.

Indeed, it is a well-settled principle that a representative plaintiff who is *not* a member of a specific group lacks standing to participate in a lawsuit on behalf of individuals in that group. *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1023 (9th Cir. 2003) (dismissal of claims is appropriate where plaintiff lacked standing concerning the putative class claims); *Foster*

*v. Ctr. Twp. of LaPorte Cnty.*, 798 F.2d 237, 245 (7th Cir. 1986) (dismissing claims where plaintiff was not a member of the class she was named to represent.").

When there is no representative plaintiff with standing to pursue certain claims the class allegations and/or definition may be dismissed, stricken, or modified. *See, e.g., In re Initial Pub. Offering Sec. Litig.*, No. 21 MC 92, 2008 WL 2050781 (S.D.N.Y. May 13, 2008).  There, District Judge Scheindlin explained that if a putative representative was not a member of a proposed class, those class claims were improper and should be stricken. *Id.* at *3-4 ("*Plaintiffs have cited no case where a court permitted a class representative that was not a member of the class*.  Indeed, I am aware of none;" and holding that defendant may file a motion to strike the class allegations "for any class in which the putative representative is not a member of the proposed class") (emphasis added); *Simel v. JP Morgan Chase*, No. 05 CV 9750, 2007 WL 809689, at *5 (S.D.N.Y. Mar. 19, 2007) ("A plaintiff cannot, as a matter of standing, rest his claim to relief on the legal rights or interests of third parties. He cannot rely on the legal rights of others who may have such a cause of action in asserting his claim.") (internal quotations omitted); *Rahman,* 2008 WL 161230, at *3 (finding that where a plaintiff was precluded from representing putative plaintiffs due to a legal impediment, a motion to strike claims on behalf of those individuals is procedurally proper and explaining that "'[a] court may order deletion of portions of a complaint's class claims once it becomes clear that the plaintiffs cannot possibly prove the deleted portion of those claims.'") (quoting 5 Moore's Federal Practice § 23-145 (3d ed. 2007)).  As the named plaintiffs here do not have standing to bring suit on behalf of individuals subject to the Arbitration Agreement and are

22

barred from joining this action, the class and collective definitions should be modified to exclude the claims of anyone hired on or after May 1, 2013.

## **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court compel individual arbitration of all of Motyka's claims pursuant to the Arbitration Agreement, dismiss him from the Guglielmo Litigation, and strike or modify the class and collective definitions in the Amended Complaint to exclude any individuals hired on or after May 1, 2013.

Dated:  New York, New York      Respectfully submitted,
       October 16, 2015

                                         MORGAN, LEWIS & BOCKIUS LLP

                                         By: /s/ Christopher A. Parlo
                                             Sam S. Shaulson
                                             Christopher A. Parlo
                                             Leni D. Battaglia

                                             101 Park Avenue
                                             New York, NY 10178
                                             Tel.: (212) 309-6000
                                             Fax: (212) 309-6001

                                             *Attorneys for Defendant*

DB1/ 84989342.3

23