**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------x

JOHN GUGLIELMO and CRAIG WILHELMY.     :
on behalf of themselves, individually,     :
and on behalf of all others similarly situated,     :
    :
           Plaintiffs,     :
    :
           v.     :      15-CV-3117 (ADS)(AYS)
    :
THE CHEESECAKE FACTORY RESTAURANTS, INC., :
    :
           Defendant.     :

-------------------------------------------------------------------------x

## JOINT STIPULATION OF COLLECTIVE ACTION SETTLEMENT AND RELEASE

Subject to its terms and conditions and the approval of the Court, this Joint Stipulation of Settlement and Release (the "Stipulation") reflecting the terms of the parties' settlement (the "Settlement") is made and entered into by and among the Named Plaintiff Johnathan Guglielmo ("Named Plaintiff"), individually and on behalf of the Eligible Settlement Members and Service Award Eligible Members, and Defendant The Cheesecake Factory Restaurants, Inc. ("Defendant" or the "Company"). Plaintiff and the Company are jointly referred to in this Stipulation as the "Parties," and each of them as a "Party."

## I.     TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the Named Plaintiff (for himself and on behalf of the Putative Settlement Members, as defined below) and the Company, with the assistance of their respective counsel, that the Action, the Named Plaintiff's Released Claims, the Qualified Settlement Members' Released Claims, and Plaintiffs' Counsel's Released Fees/Costs Claims (all of which are defined below) shall be finally and fully compromised, settled, and released, and the Action shall be dismissed with prejudice, as to Named Plaintiff and all Qualified Settlement Members, upon and subject to the terms and conditions and limitations of this Stipulation as set forth below.

## II.     DEFINITIONS

In addition to terms defined elsewhere in the Stipulation, the following terms have the meanings indicated below:

1.    "Action" means the civil action titled *John Guglielmo, et al. v. The Cheesecake Factory Restaurants, Inc.*, filed in the United States District Court for the Eastern District of New York, No. 15-cv-3117 (ADS)(AYS).

2.    "Approval Order" means the Court's order granting approval of the Settlement, substantially in the form attached to this Stipulation as **Exhibit A**.

3.    "Claims Administrator" or "Settlement Administrator" means the third-party claims administration firm selected by the Parties.  The Parties have agreed to use JND Legal Administration Co.  as  the  Claims  Administrator,  subject  to this  Court's   consideration and approval.

4.    "Claim Bar Date" means the date 180 days after Court approval of this stipulation.

5.    "Claim Notice" or "Notice" or "Claim Letter" or "Letter" means the materials distributed to each Putative Settlement Member by which Plaintiffs' Counsel informs Putative Settlement Members about the Settlement and the ability to participate in the Settlement.  The Notice shall include information specifically informing Putative Settlement Members that by negotiating the check sent to them, they are joining the settlement and fully and finally releasing the Qualified Settlement Members' Released Claims.  The Claim Notice is attached hereto as **Exhibit B**.

6.    "Claim Period" means the period of time beginning on May 28, 2009 through July 31, 2017.

7.    "Counsel for the Company" means Morgan, Lewis & Bockius LLP.

8.    "Court" means the District Court in the Eastern District of New York where the Action is pending.

9.    "Day" or "days" refer to calendar days below unless specifically indicated as business days.

10.    "Eligible Settlement Member" or "Putative Settlement Member" is an individual who previously submitted an opt-in form to participate in the Action and who participated in discovery by either submitting an interrogatory response and/or producing documents pursuant to the Court's rules and direction.

11.    "Final Judgment" means the latest of: (i) the date of final affirmance on any appeal of the Court's Approval Order; (ii) the date of final dismissal, with prejudice, of the last pending appeal from the Court's Approval Order; or (iii) if no appeal is filed,

the expiration date of the time for the filing or noticing of any form of valid appeal from the Court's Approval Order.

12.    "Grace Period" means the 30-day period following the Claim Bar Date.

13.    "Net Settlement Fund" shall mean the Settlement Payment less: (i) proposed service awards to eligible Qualified Class Members (as set forth in Section IX herein); and (ii) the proposed Class Counsel's attorneys' fees and costs (as set forth in Section IX herein).

14.    "Named Plaintiff" means Named Plaintiff Johnathan Guglielmo.

15.    "Plaintiffs' Counsel" means Borrelli & Associates, P.L.L.C.

16.    "Qualified Settlement Member" means Named Plaintiff and all Putative Settlement Members who negotiate their Settlement Check, which shall be attached to the Claim Notice in the form attached to this Stipulation as Exhibit B.  Qualified Settlement Members that are also Service Award Eligible Plaintiffs shall execute a separate release as described below.

17.    "Qualified Settlement Fund" or "QSF" means the qualified settlement fund set up by the Settlement Administrator into which the Settlement Payment will be deposited in accordance with Section XI of this Stipulation.

18.    "Released Parties" means the Company and all of its parents, predecessors, successors, joint venturers, subsidiaries, and affiliated entities and its and their owners and shareholders, all of their officers, directors, employees, lawyers, insurers, agents and representatives, and each of their successors and assigns.

19.    "Service Award Eligible Plaintiffs" means individuals designated by Plaintiffs' Counsel who are eligible to receive a service award (the "Service Award").  Service Award Eligible Plaintiffs shall be required to execute a general release of all employment claims, which shall be substantially in the form attached to this Stipulation as **Exhibit C** (the "General Release").

20.    "Settlement Check" means the check containing each Putative Settlement Members' respective Settlement Share and which each Putative Settlement Member must negotiate to claim their Settlement Share, consent to join this Collective Action Settlement, and release the Qualified Settlement Members' Released Claims.  The Settlement Check shall include the following language on the back of the check:  "THIS IS A RELEASE.  By negotiating this check, I agree that I shall participate in the Settlement and fully release all Qualified Settlement Members' Released Claims, as defined in the accompanying Notice."   If this

3

language does not fit on the check, then the check shall include substantially similar language to be agreed upon by the Parties.

21.     "Settlement Payment" means the maximum payment by the Company pursuant to this Stipulation of Three Hundred and Forty-Five Thousand Dollars and No Cents ($345,000.00) to fund the QSF.  The Settlement Payment will be the sole source and maximum payment by the Company or the Released Parties (defined below) under this Settlement and shall include: (1) all Settlement Shares (defined below); (2) any Service Awards approved for the Service Award Eligible Plaintiffs, if any; and (3) all of Plaintiffs' Counsel's attorneys' fees and costs approved by the Court. With the exception of the Company's payroll taxes associated with the portion of the Settlement Payment claims by Qualified Settlement Members, and with the exception of any fees of the Settlement Administrator, the Company and/or the Released Parties shall not pay or be required to pay any amount in connection with this Settlement above and beyond the Settlement Payment.  To pay the Company's share of payroll taxes, the Settlement Administrator shall first use any funds associated with unclaimed amounts of the Settlement Payment.  If the Company's share of payroll taxes exceeds the unclaimed amounts of the Settlement Payment, the Company shall pay to the Settlement Administrator the remaining amounts necessary to cover its share of payroll taxes.

22.     "Settlement Share" means each Putative Settlement Member's potential share of the Net Settlement Fund, as calculated pursuant to this Settlement based on the allocation formula described in Section XII of this Stipulation.

23.      "Parties" means the Company and Named Plaintiff on behalf of himself and all Qualified Collective Members (including the Service Award Eligible Plaintiffs).

## III.   **RECITALS**

1.     On May 28, 2015, Named Plaintiff filed the Action in the United States District Court for the Eastern District of New York.

2.     On September 21, 2016, the Court So-Ordered the Parties' stipulation to conditionally certify a 29 U.S.C. § 216(b) collective in this action.

3.     From May 28, 2015 until May 3, 2017, a total of ninety-one individuals joined this action as opt-in Plaintiffs, of whom seventy-nine participated in discovery, as described above.

4.     The Company conducted an extensive investigation into Named Plaintiffs' and Putative Settlement Members' claims and the parties engaged in discovery pursuant

to the Court's rules and direction, including exchanging written discovery, producing documents and data, and conducting depositions.

5. On July 31, 2017, counsel for the Parties participated in good-faith, arms-length mediation with mediator Martin Scheinman ("Mediator Scheinman"). During that mediation, the Parties were unable to reach an agreement to settle the Action. However, the Parties continued to negotiate in good faith and Mediator Scheinman remained involved to assist the Parties in reaching a resolution.

6. Based on both formal and informal discovery conducted in this case, including deposition testimony of Named Plaintiff, multiple opt-in Plaintiffs, and a corporate representative of Defendant, written testimony from all Eligible Settlement Members, information exchanged confidentially for purposes of mediation, and their own independent investigation and evaluation, Plaintiffs' Counsel are of the opinion that the Settlement is fair, reasonable, and adequate and is in the best interest of the Putative Settlement Members in light of all known facts and circumstances, including the risk of significant delay, defenses asserted by the Company as to both collective action certification and the merits of the claims, and potential appellate issues.

7. It is the mutual desire of the Parties to fully and finally settle, compromise, and discharge all disputes, allegations, and claims of any nature raised in or related in any way to the Action as more fully set forth below. In order to achieve a full and complete release and discharge of the released persons, the Qualified Settlement Members, including Named Plaintiff and the Service Award Eligible Plaintiffs, acknowledge that this Settlement is intended to include and resolve all the claims that were asserted in the Action (or could have been based on the factual allegations therein) as more fully set forth below.

8. This Settlement represents a compromise of highly disputed claims. Nothing in this Settlement, nor any other documents to be prepared related to the Settlement, nor the Settlement itself, is intended to be or will be construed as an admission by the Company or any of the Released Parties that any of the claims in the Action or those that could have been pled in the Action have merit or that they have any liability (all of which is expressly denied by the Company) to Named Plaintiff, the Service Award Eligible Plaintiffs, or any Putative Settlement Members on those claims, or any other claim, or that decertification of the conditionally certified action would be inappropriate. Nothing in this Action shall be construed as an admission by Named Plaintiff that the Company's defenses in this Action have merit.

9.      Plaintiffs' Counsel represents that they have no knowledge of any other lawyers or law firms being engaged by any Putative Settlement Member or other Plaintiff as defined in the initial Complaint filed on May 28, 2015 with respect to the claims in this Action or have any other interest in this Action.

## IV.    DUTIES OF THE PARTIES TO PROMPTLY INITIATE THE COLLECTIVE ACTION SETTLEMENT AND MOVE FOR COURT APPROVAL

1.      Promptly upon, or prior to the execution of this Settlement, Plaintiffs' Counsel will submit to Counsel for the Company the proposed Approval Order and Supporting Settlement Materials, which herein refers to the Claim Notice, Settlement Check, and the General Release for Service Award Eligible Plaintiffs to complete. Following agreement on the language in the Approval Order and Claim Notice, Plaintiffs' Counsel will file a letter motion seeking Settlement approval with the Court (the "Motion"). The Company will not oppose the Motion or the amounts requested as attorneys' fees and costs. The proposed Approval Order shall include the following terms:

a.      Approving the Settlement and the resulting releases below and thus dismissing the Action with prejudice, subject to the Court's continued jurisdiction over the implementation of the Settlement.

b.      Approving Plaintiffs' Counsel's request for attorneys' fees and costs, provided that the total requested amount for attorneys' fees and costs does not exceed $203,678.00.

c.      Approving the requested Service Award payments to Service Award Eligible Plaintiffs, provided that the requested amount for the total aggregate service awards does not exceed $45,000.00.

d.      Appointing a Settlement Administrator to exercise the duties set forth in this Stipulation.

e.      Directing Plaintiffs' Counsel to contact Putative Class Members and disseminate the Claim Notice and Settlement Checks, which shall be provided to Plaintiffs' Counsel by the Settlement Administrator, to the Putative Class Members (including the Service Award Eligible Plaintiffs).

f.      Directing Plaintiffs' Counsel to contact Service Award Eligible Plaintiffs to disseminate the General Release that Service Award Eligible Plaintiffs must complete by the Claim Bar Date to receive his or her Service Award.

2.     Plaintiffs' Counsel shall provide all approval papers to Counsel for the Company at least 15 business days in advance of filing the approval materials in order to permit the Company time to provide revisions to the documents, unless a shorter time is agreed to by the Plaintiffs' Counsel and Counsel for the Company.  No settlement documents will be filed by Plaintiffs' Counsel absent approval by Counsel for the Company, which approval shall not be unreasonably withheld.

3.     Any disagreement among the Parties concerning the Settlement (including this Agreement) and its implementation will be referred to Mediator Scheinman for resolution if the Parties' good faith efforts to resolve the disagreement in person or by phone have failed.

## V.     **NON-ADMISSION OF LIABILITY**

1.     The Stipulation is submitted solely for purposes of the Settlement.  The Stipulation is in no way an admission of liability or that a collective certification of any type is proper or that certification requirements would be established under governing law or by further discovery.

2.     The existence and terms of this Settlement and the Stipulation shall not be admissible in this or any other action or proceeding for any purpose, other than to enforce the terms of this agreement, including any proceeding over payment of the fund, and the releases and non-admission provisions herein, including as evidence that (i) the proposed collective or any other collective or any class should be certified or not decertified; (ii) this Action or any other action should be certified as a class or collective action or not decertified; or (iii) the Released Parties are liable to Plaintiff, the Putative Collective Members, or any other putative class or collective action member.

3.     If, for any reason, the Court grants approval of the Settlement with material modification, or if the Court's approval of the Settlement is reversed or materially modified on appellate review, then all terms of this Stipulation (other than the non-admission requirements herein) and the Settlement will automatically become null and void; the terms and fact of this Settlement (and of any act performed or document executed pursuant to or in furtherance of the Settlement), the fact that the Parties had made the Stipulation, or that the Court granted certification of the collective action, or otherwise accepted the Stipulation, will be inadmissible evidence in any subsequent proceeding in the Action or elsewhere.  An award of a service payment to any Service Award Eligible Plaintiff or Plaintiffs' Counsel's attorneys' fees and costs in an amount less than that stated in the Stipulation will not constitute a failure to grant approval of the Settlement or a material modification of the Settlement for purposes of any provision of this Stipulation.

## VI.   APPOINTMENT AND DUTIES OF SETTLEMENT ADMINISTRATOR

**1.**   Subject to the approval of the Court, the Parties have agreed to the appointment of _____ as a Settlement Administrator to perform the following duties in connection with administration of the Settlement:  (i) calculating the amounts due to each Putative Collective Member pursuant to the Settlement; (ii) establishing the QSF; (iii) disbursing all amounts payable from the QSF and handling all tax reporting; (iv) disbursing Plaintiffs' Counsel's approved attorneys' fees and costs payment; (v) notifying Plaintiffs' Counsel and Counsel for the Company of any Qualified Settlement Members who have not negotiated their Settlement Checks by the applicable deadline; (vi) returning any unclaimed portions of the Settlement Payment to Defendant; and (vii) other duties as determined jointly by the Parties.

**2.**   The Company will pay any and all fees associated with the Settlement Administrator.  To pay the fees associated with the Settlement Administrator, the Settlement Administrator shall first use any funds associated with unclaimed amounts of the Settlement Payment that were not already designated to pay the Company's share of payroll taxes.  If the Settlement Administrator's fees exceeds the unclaimed amounts of the Settlement Payment, the Company shall pay to the Settlement Administrator the remaining amounts necessary to cover the Settlement Administrator's fees.

**3.**   The Company will provide the Settlement Administrator with data necessary to perform the Settlement Administrator's duties.

**4.**   All disputes relating to the Settlement Administrator's performance of its duties, after good faith efforts by the Parties to first resolve such disputes, will be referred to the Court, if necessary, which will have continuing jurisdiction over this Settlement until all payments and obligations contemplated by this Settlement have been fully carried out and thereafter to enforce the releases contained herein.

## VII.   NOTICE TO THE PUTATIVE COLLECTIVE OF THE SETTLEMENT AND CLAIMS PROCESS

**1.**   Initiating Notice and contacting the Putative Settlement Members:

   a.   Within twenty-five (25) business days after the Court enters the Approval Order, Plaintiffs' Counsel, through the Settlement Administrator, will initiate Notice by communicating with all Putative Settlement Members regarding the Settlement and forwarding to them the Claim Letter and

Settlement Checks, which shall be sent to all Putative Settlement Members by the Settlement Administrator.

**2.**     Claim Letter

a.     The Notice communicated to the Putative Settlement Members will include for each recipient Putative Settlement Member his or her Settlement Check, the total amount of the Settlement Fund, the total amount of Eligible Service Awards, and the total amount requested as Attorneys' Fees and Costs. The recipient's pro rata share of the Settlement will be calculated based on the length of employment within the Claim Period as described below.

b.     Each Putative Settlement Member (including the Service Award Eligible Plaintiffs) will have until the Claim Bar Date to negotiate the Settlement Check. If a Putative Class Member fails to negotiate the Settlement Check by the Claim Bar Date, he or she may assert that he or she has "good cause" for being unable to timely negotiate his or her individual Settlement Check during the Grace Period. The Parties shall jointly confer regarding any such assertion and if they do not agree on permitting the individual to join the Settlement, each party shall submit a one-page letter brief to the Court, who will issue a binding decision on whether the individual may join.

c.     Service Award Eligible Plaintiffs must sign and submit the General Release attached to this stipulation as Exhibit C, which will be deemed timely submitted if it is returned to the Settlement Administrator and/or Plaintiffs' Counsel by first-class mail and postmarked or received by facsimile, or electronic mail by no later than the Claim Bar Date (or if it is received during the Grace Period and the Service Award Eligible Plaintiff has good cause for the late submission).

d.     In the event that a General Release is timely submitted but is deficient in one or more respects, the Settlement Administrator or Plaintiffs' Counsel will return the General Release to the Putative Settlement Member within seven (7) business days of receipt with a notice explaining the deficiencies and stating that the Putative Settlement Member will have until the Claim Bar Date or ten (10) business days from the date of the deficiency notice to correct the deficiency and resubmit the General Release, whichever is later. The envelope containing any resubmitted General Release must be postmarked by the Claim Bar Date or within ten (10) business days of the date of the deficiency notice to be considered timely, whichever is later, absent a showing of good cause. Failure to correct the deficiencies set forth in the deficiency notice within the timeframe set forth above will result in

the Service Award Eligible Member being excluded from the Settlement, unless counsel for the Parties otherwise consent, or unless otherwise provided by Section VII(3)(a) herein.

e.     The Claim Notice will include a statement explaining that each Putative Collective Member who negotiates his or her Settlement Check and each Service Award Eligible Plaintiff that completes the General Release acknowledges and agrees that the Settlement and the provision of that individual's Settlement Share and/or Service Award is not intended to be and will not be construed as an acknowledgment of any liability between the Putative Settlement Member and/or Service Award Eligible Member and the Company, or as any admission by the Company of the validity of any potential claim.

**3.**     Untimely Submissions

a.     No Settlement Checks will be valid if negotiated after the Claim Bar Date, unless the Putative Settlement Member shows good cause during the Grace Period in accordance with this Stipulation.

**4.**     Reports by Counsel

a.     By no later than five (5) business days after the Claim Bar Date, Plaintiffs' Counsel will submit to Counsel for the Company a report setting forth the Service Award Eligible Members who as of that date have submitted a (i) valid and executed General Release; (ii) invalid General Release, if any; and (iii) requests to opt-out of the Settlement, if any.  Within ten (10) business days after the Claim Bar Date, Plaintiffs' Counsel will provide to Counsel for the Company copies of valid General Releases received from Service Award Eligible Members.

b.     <u>By no later than five (5) business days after the end of the Grace Period, the Settlement Administrator shall inform Plaintiffs' Counsel and Counsel for the Company the total amount of checks negotiated, the number of checks negotiated, the total amount of uncashed checks, and the number of uncashed checks.</u>

**5.**     Effect of Affirmatively Opting-Out

a.     If any Putative Settlement Member affirmatively opts-out, said individual's claims in this action will be dismissed without prejudice and such claims shall be tolled on an individual basis for the six-month period following the date he or she opts-out from the Action.

6.    Effect of Failing to Respond to the Claim Notice

a.    If any Putative Settlement Member fails to respond to the Claim Notice by failing to negotiate his or her Settlement Check by the Claim Bar Date, said individual's claims in this action will be dismissed with prejudice.

## VIII.    RIGHT TO RESCIND

In the event that (i) the Settlement is construed in such a fashion that the Company is required to pay more than the Settlement Payment, with the exception of the Company's share of payroll taxes and the fees of the Settlement Administrator; (ii) the Court materially alters the application or scope of the agreed upon releases below or objects to or materially changes any of the terms of the Settlement; (iii) the collective action claims are not certified for settlement purposes; or (iv) more than five (5) Putative Settlement Members affirmatively opt-out of the Settlement; the Company will have the right to rescind the Stipulation and all actions taken in its furtherance will be null and void other than the non-admission provision herein.  If the Company rescinds the Stipulation pursuant to this Section, the Stipulation's terms and provisions (other than the non-admission provision) shall have no further force and effect and shall not be used in this Action, in any other proceeding or otherwise, for any purpose; the negotiations leading to the settlement set forth in this Stipulation may not be used as evidence for any purpose; and the Company shall retain the right to challenge all claims and allegations, to assert all applicable defenses, and to support or dispute the propriety of collective action certification or decertification on all applicable grounds.  In the event that the Company rescinds the Stipulation, the Company shall be liable for all fees and expenses of the Claims Administrator, if any.

## IX.    ATTORNEYS' FEES AND COSTS AND PLAINTIFF'S SERVICE PAYMENTS

At the same time as the motion for approval or as part of that motion, Named Plaintiff and Plaintiffs' Counsel may move the Court for awards of a service payment from the Settlement Payment in an amount not to exceed $45,000.00 in total for the Service Award Eligible Plaintiffs for their services on behalf of the Putative Settlement Members and as consideration for a full release of employment claims in addition to each Service Award Eligible Plaintiffs' respective Settlement Share.  Any portion of the Service Awards requested, but not approved by the Court shall not be included in the Settlement Payment.  At the same time as the motion for approval or as part of that motion, Plaintiff's Counsel also may move the Court for an award of attorneys' fees and costs from the Settlement Payment not to exceed $203,678.00 - - $200,000.00 of which shall represent Plaintiffs' Counsel's negotiated reasonable attorney's fees as a percentage of Plaintiffs' Counsel's Lodestar, and $3,678.00 of which shall represent Plaintiffs' Counsel's costs at the time of settlement and shall be retained by the Company.  Any portion of the attorney's fees and costs requested that are not approved by the Court shall not be included in the Settlement Payment and shall be retained by the Company.  The Company will not oppose the motion for Service Awards

or Collective Counsel's attorneys' fees and costs to the extent consistent with the terms set forth herein.

## X.   REVERSAL OR MATERIAL MODIFICATION OF JUDGMENT ON APPEAL

If, after a notice of appeal or a petition for writ of *certiorari*, or any other motion, petition, or application, the reviewing court vacates, reverses, or modifies the Approval Order such that there is a material modification to the Settlement, and that Court's decision is not completely reversed and the Approval Order is not fully affirmed on review by a higher court, the Named Plaintiff through Plaintiffs' Counsel and the Company through its counsel will each have the right to void the Settlement, which the Party must do by giving written notice to the other Parties, the reviewing court, and the Court no later than fourteen (14) days after the reviewing court's decision vacating, reversing, or materially modifying the Approval Order.  Notwithstanding a reviewing court's vacatur, reversal, or modification of the Approval Order, the Company's obligation to make payments under this Settlement remains limited by the maximum Settlement Payment.

## XI.   CREATION AND DISTRIBUTION OF THE QUALIFIED SETTLEMENT FUND

1.   Within twenty (20) business days of the Court granting final approval of this Settlement, the Company shall wire an amount equal to the Net Settlement Fund to the Settlement Administrator.  Within ten (10) business days of receiving this payment, the Settlement Administrator shall mail the Settlement Checks to Putative Settlement Members.  The amount wired shall be deposited into an account opened and administered by the Claims Administrator as a "Qualified Settlement Fund" ("QSF") under Section 468B of the IRC and Treas. Reg. § 1.468B-1, 26 C.F.R. § 1.468B-1, et seq.  All Form W-2s and W-9s issued pursuant to this Settlement shall be issued under the name of the QSF only and all payments made to Qualified Settlement Members shall be under the name of the QSF only

2.   By no later than five (5) business days after the Claim Bar Date, Plaintiffs' Counsel will submit to Counsel for the Company a report setting forth the Service Award Eligible Members who as of that date have submitted a (i) valid and executed General Release; (ii) invalid General Release, if any; and (iii) requests to opt-out of the Settlement, if any.  Within ten (10) business days after the Claim Bar Date, Plaintiffs' Counsel will provide to Counsel for the Company copies of valid General Releases received from Service Award Eligible Members

3.   Within fifteen (15) business days after the Grace Period expires, the Settlement Administrator shall inform the Company of the amount necessary to cover approved attorneys' fees and costs, approved Service Award payments, and payments to Qualified Collective Members, including applicable payroll taxes, and the costs of the Settlement Administrator.  The Company shall wire this amount to

the Claims Administrator within twenty (20) business days after the later of the Claim Bar Date or Final Judgment. The amount wired shall be deposited the QSF. The Settlement Administrator shall mail a check to Plaintiffs' Counsel for their approved attorneys' fees and costs within five (5) business days after receipt of the amount from the Company.  Payment shall be mailed to Borrelli & Associates, P.L.LC., attention Michael J. Borrelli, Esq., 910 Franklin Avenue, Suite 200, Garden City, New York 11530.

4.     If fewer than all Putative Settlement Members timely negotiate their Settlement Checks, the Settlement Share allocated to each Putative Settlement Member who does not timely negotiate their Settlement Check shall be retained by the Company and will not be included in the QSF.

5.     Payments to Service Award Eligible Members of their respective approved Service Awards will be made by the Settlement Administrator within ten (10) business days after the Company funds the QSF with funds to cover these payments.

6.     Any Settlement Check not negotiated by the Claims Bar Date shall be null and void and said funds shall revert back to the Company thirty (30) days after the void date unless the individual seeking to negotiate the Settlement Check is able to show good cause during the Grace Period pursuant to this Stipulation.

## XII.   CALCULATING THE SETTLEMENT SHARES

1.     Each Putative Settlement Member shall be eligible to receive a payment from the Net Settlement Fund to be determined based on the duration of that individual's employment with the Company during the Claims Period.

2.     Each Putative Collective Member's monetary share of the settlement will be calculated as follows:

a.     A Putative Settlement Member's Settlement Share will be the product of the Net Settlement Fund times the percentage (rounded up or down to the nearest five-digit decimal) of (i) that Putative Settlement Member's duration of employment with the Company within the Claims Period divided by (ii) the total of the duration of employment within the Claims Period attributable to all Putative Settlement Members pursuant to this Settlement based upon the number of weeks worked by the Putative Settlement Members as reflected in the Company's payroll / employee records, which shall be deemed accurate.  For example, if a Putative Settlement Member is credited with working for six months within the Claims Period and the value of payments for these Compensable Days is

13

0.3% of the Net Settlement Fund, then that Putative Settlement Member's Settlement Share will be 0.3% of the Net Settlement Fund. For an avoidance of doubt, the number of Qualified Settlement Members will not affect the amount of each Putative Settlement Member's Settlement Share because the Company will retain unclaimed amounts. In the event that any disputes arise pertaining to the number of weeks used to calculated a Putative Settlement Member's Share, the Parties shall submit this dispute to Mediator Scheinman for resolution, whose decision shall be deemed final.

b.     Because the Settlement Shares include sums in settlement of claims for wages, interest, liquidated damages, and penalties, fifty percent (50%) of each Settlement Share is intended to constitute a settlement of a claim for unpaid wages, for which the Settlement Administrator will issue a Form W-2 to the Qualified Collective Member under the name of the QSF only, payroll tax withholding and deductions will be taken, and the employer's share of payroll taxes on that portion will be paid from the QSF by the QSF; and the remaining fifty percent (50%) of each Settlement Share is intended to constitute a settlement of claims for interest, liquidated damages, and statutory penalties, for which no payroll tax withholding and deductions will be taken and the Settlement Administrator will issue a Form 1099 to the Qualified Settlement Member. The Qualified Settlement Members are responsible for all federal, state, and local tax liabilities that may result from such Settlement Share payments subject to reporting on a Form 1099, and the Released Parties shall bear no responsibility for such liabilities.

c.     Any approved Service Awards to Service Award Eligible Plaintiffs, which is not payments of wages, and the Plaintiffs' Counsel's approved attorneys' fees and costs payment shall be reported on Form 1099s to the Service Award Eligible Plaintiffs and Plaintiffs' Counsel, respectively. As described above, the Settlement Administrator shall mail Plaintiffs' Counsel's approved attorneys' fees and costs to Borrelli & Associates, P.L.L.C. at 910 Franklin Avenue, Suite 200, Garden City, New York 11530 within five (5) business days after the Company funds the QSF. The Service Award Eligible Plaintiffs and Plaintiffs' Counsel are respectively responsible for all federal, state, and local tax liabilities that may result from such payments and the Released Parties shall bear no responsibility for such liabilities.

d.     The Settlement Administrator will report all payments to government authorities including the IRS as required by law, and shall make all legally

required deductions, withholdings and/or employment tax payments out of the QSF.

e.     The Company and Plaintiffs' Counsel make no representations with respect to the taxability of any payments pursuant to this Settlement.  During the Notice process, Plaintiffs' Counsel will advise Putative Settlement Members to seek their own tax advice as necessary, and the Parties agree that each Putative Settlement Member will have sufficient opportunity to seek such advice after receiving Notice.

## XIII.   NO EFFECT ON OTHER BENEFITS

The Settlement Shares and Service Awards will not create any credit or otherwise affect the calculation of benefits provided under any benefit or compensation plan or program provided by the Company (such as 401(k), pension, bonus, severance, or deferred compensation plans), and no payment made pursuant to this Settlement will be compensation for purposes of such plans/programs, require any contribution or award under such plans/programs, or otherwise require or modify coverage, contributions, or benefits under such plans/programs, and the Qualified Settlement Members will be deemed to have waived all such benefit or compensation plan or program claims, whether known or unknown by them, as part of their releases of claims under this Settlement.

## XIV.   RELEASE OF CLAIMS BY THE SERVICE AWARD ELIGIBLE PLAINTIFFS, QUALIFIED SETTLEMENT MEMBERS, AND PLAINTIFFS' COUNSEL

1.     **Service Award Eligible Plaintiffs Released Claims**:  In consideration of their eligibility for a Service Award payment, the Service Award Eligible Plaintiffs, including the Named Plaintiffs Johnathan Guglielmo and Craig Wilhelmy, voluntarily, completely, and irrevocably releases, acquits, and forever discharges , on behalf of him/herself and his/her and assigns, through the date of execution of this General Release, the Released Parties, which are The Cheesecake Factory Restaurants, Inc. and any related entity, including all of its parents, predecessors, successors, joint venturers, subsidiaries, and affiliated entities and its and their owners and shareholders, all of their officers, directors, employees, lawyers, insurers, agents and representatives, and each of their successors and assigns (together, the "Released Parties"), from: any and all claims, obligations, causes of action, actions, demands, rights, and liabilities of every kind, nature and description, whether known or unknown, whether anticipated or unanticipated, arising prior to the date that the Plaintiff executes this release, including but not limited to those claims which: (a) were pled in the Action at any time; and/or (b) could have been pled in the Action, including all claims based on any of the following: (i) alleged failure to pay any type of overtime wages, (ii) alleged failure

15

to pay any type of earned or minimum wages, including claims for spread of hours payments and penalties and call-in pay payments and penalties under New York state law, (iii) alleged unlawful deductions, (iv) alleged improper tip credit calculations (v) any other alleged local, state or federal wage-and-hour violation, (vi) alleged discrimination, retaliation, harassment, or wrongful discharge, and (vii) any statutory, constitutional, regulatory, contractual and common law employment-related claims relating to Plaintiff's employment with Defendant, including claims for wages, damages, restitution, equitable relief, or litigation costs; and (c) this release includes any and all of the following based on any of the matters released by the foregoing: penalties, liquidated damages, punitive damages, attorneys' fees, litigation costs, restitution, and equitable relief ("Plaintiff's Released Claims").

For the avoidance of doubt, this is a complete and general release of all possible claims to the maximum extent allowed under the law, including a release to all rights and claims under: Title VII of the Civil Rights Act of 1964; the Civil Rights Act of 1991; the Family and Medical Leave Act; the Pregnancy Discrimination Act of 1978; the Age Discrimination in Employment Act of 1967; the Americans with Disabilities Act of 1990; the Equal Pay Act of 1963; the Older Workers Benefit Protection Act of 1990; the Genetic Information Nondiscrimination Act of 2008; the Worker Adjustment and Retraining Notification Act of 1989; the Employee Retirement Income Security Act (including, but not limited to, claims for breach of fiduciary duty under ERISA); New York State Constitution, common law of New York, New York State Human Rights Law, New York Equal Pay Law, New York State Civil Rights Law, New York Off-duty Conduct Lawful Activities Discrimination Law, New York State Labor Relations Act, Article 23-A of the New York State Corrections Law, New York Whistleblower Statute, New York Family Leave Law, New York Minimum Wage Act, New York Wage and Hour Law, New York Wage Hour and Wage Payment Law, New York State Worker Adjustment and Retraining Notification Act, retaliation provisions of New York Workers' Compensation Law, the New York City Earned Sick and Safe Time Act.

2.  **Qualified Settlement Members' Released Claims.**  In consideration for negotiating the Settlement Check sent to him or her, each and every Putative Settlement Member who timely negotiates his or her Settlement Check (including the Named Plaintiffs and Service Award Eligible Plaintiffs) voluntarily, completely, and irrevocably releases, acquits, and forever discharges , on behalf of him/herself and his/her and assigns, through the date the Settlement Check is negotiated, the Released Parties, which are The Cheesecake Factory Restaurants, Inc. and any related entity, including all of its parents, predecessors, successors, joint venturers, subsidiaries, and affiliated entities and its and their owners and shareholders, all of their officers, directors, employees, lawyers, insurers, agents

16

and representatives, and each of their successors and assigns (together, the "Released Parties"), from: (a) all claims, obligations, demands, damages, actions, rights, causes of action, costs, expenses and liabilities, of whatever kind and nature, character and description, whether known or unknown, and whether anticipated or unanticipated. including all claims asserted or that could have been asserted in this Lawsuit, claims under applicable wage and hour law and wage payment law, including claims under the New York Labor Law ("NYLL") or the Fair Labor Standards Act ("FLSA"), including any and all claims for improper or unpaid wages, that arose from, are based on, or are in any way related or incidental to their employment with The Cheesecake Factory Restaurants, Inc. between May 28, 2009 and the date they negotiate the Settlement Check, including those claims related to payment of minimum or overtime wages, payment for all hours worked, wage or other employee notices and/or statements, spread of hours or call-in pay, meal and/or rest breaks, notice and use of tip credits, payment of final wages upon separation, provision of benefits or benefit credits, deductions, keeping records of hours worked or compensation due, deductions restitution, equitable relief, derivative claims and/or penalties, including retaliation claims; and (b) all claims for penalties, liquidated damages, punitive damages, restitution, equitable relief, violations of any other state or local statutory and/or common law related to these claims, interest, attorneys' fees, or litigation expenses under the FLSA or any state or local law wage and hour or wage payment laws based on the claims listed in (a) above, including claims under New York Equal Pay Law, New York State Labor Relations Act, New York Whistleblower Statute, New York Family Leave Law, New York Minimum Wage Act, New York Wage and Hour Law, New York Codes Rules and Regulations, New York Civil Practice Law and Rules, New York Wage Hour and Wage Payment Law, and the NYLL ("Qualified Settlement Members' Released Claims").

## XV.  PLAINTIFFS' COUNSEL'S RELEASED CLAIMS

In consideration of their eligibility for the payment of attorneys' fees and costs, Plaintiffs' Counsel hereby releases all claims, causes of action, demands, damages, costs, rights, and liabilities of every nature and description for attorneys' fees, costs, and expenses against the Released Parties arising from or related to the Action, including investigation, settlement discussions and the Complaint ("Plaintiffs' Counsel's Released Claims").

## XVI.  FULL COOPERATION

The Parties will fully cooperate with each other and use reasonable efforts, including all efforts contemplated by this Settlement and any other efforts that may become necessary or ordered by the Court, or otherwise, to accomplish the terms of this Settlement, including but not limited

to, executing such documents and taking such other action as may reasonably be necessary to obtain approval of this Settlement without material modifications and to implement its terms.

## XVII.  NO PRIOR ASSIGNMENTS

The Parties represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any claims, causes of action, demands, rights, and liabilities of every nature and description released under this Settlement.

## XVIII. CONSTRUCTION

This Settlement is the result of very lengthy arms-length negotiations between the Parties. This Settlement will not be construed in favor of or against any Party by reason of the extent to which any Party or his, her or its counsel participated in the drafting of this Stipulation and related documents.

## XIX.   CAPTIONS AND INTERPRETATIONS

Paragraph titles, headings, or captions contained in this Stipulation are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement or any of its provisions.  Each other term of this Stipulation is contractual and not merely a recital.

## XX.   MODIFICATION

Unless otherwise provided herein, this Stipulation may not be changed, altered, or modified, except in writing and signed by the Parties and approved by the Court.  This Settlement may not be discharged except by performance in accordance with its terms as approved by the Court or by a writing signed by the Parties.

## XXI.  CIRCULAR 230 DISCLAIMER

Each Party to this Agreement (for purposes of this paragraph, the "acknowledging party" and each Party to this Agreement other than the acknowledging party, an "other party") acknowledges and agrees that: (1) no provision of this Agreement, and no written communication or disclosure between or among the Parties or their attorneys and other advisers, is or was intended to be, nor shall any such communication or disclosure constitute or be construed or be relied upon as, tax advice within the meaning of United States Treasury Department circular 230 (31 CFR part 10, as amended); (2) the acknowledging party (a) has relied exclusively upon his, her or its own, independent legal and tax counsel for advice (including tax advice) in connection with this Agreement, (b) has not entered into this Agreement based upon the recommendation of any other

Party or any attorney or advisor to any other Party, and (c) is not entitled to rely upon any communication or disclosure by any attorney or adviser to any other party to avoid any tax penalty that may be imposed on the acknowledging party, and (3) no attorney or adviser to any other Party has imposed any limitation that protects the confidentiality of any such attorney's or adviser's tax strategies (regardless of whether such limitation is legally binding) upon disclosure by the acknowledging party of the tax treatment or tax structure of any transaction, including any transaction contemplated by this Agreement.

## XXII. <u>APPLICABLE LAW</u>

All terms and conditions of this Stipulation and its exhibits will be governed by and interpreted according to the laws of the state of New York, without giving effect to any conflict of law or choice of law principles.

## XXIII. <u>INTEGRATION CLAUSE</u>

This Stipulation and its exhibits constitute the entire agreement between the Parties and their respective counsel relating to the Settlement and transactions contemplated by the Settlement. All prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or a Party's counsel, are merged into this Stipulation.  No rights under this Stipulation may be waived except in writing.

## XXIV. <u>BINDING ON ASSIGNS</u>

This Stipulation will be binding upon and will inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors and assigns.

## XXV. <u>COUNTERPARTS</u>

This Stipulation may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart will be deemed an original, and, when taken together with other signed counterparts, will constitute one Stipulation, which will be binding upon and effective as to all Parties, subject to Court approval.  This Stipulation may be executed by facsimile and/or pdf electronic signatures, which shall have the same force and effect as if they were original signatures.

## XXVI. PARTIES' AUTHORITY TO SIGN

The signatories to this Stipulation hereby represent that they are fully authorized to enter into this Stipulation on behalf of themselves or their respective principals.

### EXECUTION BY PARTIES AND COUNSEL

The Parties and their counsel hereby execute this document to evidence their acceptance of an agreement to the Stipulation.

DATED: July __, 2019      By: _____

                                    Johnathan Guglielmo, Named Plaintiff

DATED:  July 13, 2019      Borrelli & Associates, P.L.L.C.

                              By: _____

                                  Attorney for Plaintiff and the Collective

DATED:  July 30, 2019      By: _____

                                    The Company
                                    Sidney M. Greathouse
                                    Vice President, Legal Services
                                    The Cheesecake Factory Incorporated

## XXVI. PARTIES' AUTHORITY TO SIGN

The signatories to this Stipulation hereby represent that they are fully authorized to enter into this Stipulation on behalf of themselves or their respective principals.

## EXECUTION BY PARTIES AND COUNSEL

The Parties and their counsel hereby execute this document to evidence their acceptance of an agreement to the Stipulation.

DATED: July 23, 2019        By: _____
                                 Johnathan Guglielmo, Named Plaintiff


DATED:  July ___, 2019        Borrelli & Associates, P.L.L.C.

                              By: _____
                                   Attorney for Plaintiff and the Collective


DATED:  July 30, 2019        By: _____
                                  The Company
                                  Sidney M. Greathouse
                                  Vice President, Legal Services
                                  The Cheesecake Factory Incorporated

20

## <u>GENERAL RELEASE OF CLAIMS IN EXCHANGE FOR SERVICE PAYMENT</u>

JOHN GUGLIELMO, on behalf of him and his former and future heirs, spouses, executors, administrators, agents, assigns, and attorneys (collectively, "**Plaintiff**"), and THE CHEESECAKE FACTORY RESTAURANTS, INC. ("**CHEESECAKE**" and, together with Plaintiff, the "**Parties**"), for good and valuable consideration, the receipt of which is hereby acknowledged, and in order to resolve and settle finally, fully, and completely all matters or disputes that have ever existed, now exist or may exist between them, including the Lawsuit filed by John Guglielmo and Craig Wilhelm on May 28, 2015, in the United States District Court for the Eastern District of New York, which was assigned Case No. 15-cv-3117 (the "**Action**"), hereby enters into this General Release of Claims in Exchange for Service Payment ("**General Release**"), agreeing as follows:

1.       <u>**Consideration.**</u> Plaintiff understands and agrees that by signing this General Release and, contingent upon the Court's approval of the Parties' Collective Action Master Settlement Agreement and Release to which this General Release is incorporated as an exhibit (**"Master Settlement Agreement**"), Plaintiff will be eligible to receive a Service Payment of $22,500.00 consistent with the provisions of Section **XIV.1** of the Settlement Agreement.  Separate and apart from this Agreement, Plaintiff will also be eligible to receive his/her individual share of the Collective Action Settlement Agreement, for which Plaintiff will receive a separate notice, consistent with the terms and conditions of the Parties' Master Settlement Agreement.

2.       <u>**Release and Waiver of Rights and Claims.**</u> In exchange for the Service Payment, and to the full extent permitted by law, Plaintiff voluntarily, completely, and irrevocably releases, acquits, and forever discharges , on behalf of him/herself and his/her and assigns, through the date of execution of this General Release, the Released Parties, which are THE CHEESECAKE FACTORY RESTAURANTS, INC. and any related entity, including all of its parents, predecessors, successors, joint venturers, subsidiaries, and affiliated entities and its and their owners and shareholders, all of their officers, directors, employees, lawyers, insurers, agents and representatives, and each of their successors and assigns (together, the "Released Parties"), from: any and all claims, obligations, causes of action, actions, demands, rights, and liabilities of every kind, nature and description, whether known or unknown, whether anticipated or unanticipated, arising prior to the date that the Plaintiff executes this release, including but not limited to those claims which: (a) were pled in the Action at any time; and/or (b) could have been pled in the Action, including all claims based on any of the following: (i) alleged failure to pay any type of overtime wages, (ii) alleged failure to pay any type of earned or minimum wages, including claims for spread of hours payments and penalties and call-in pay payments and penalties under New York state law, (iii) alleged unlawful deductions, (iv) alleged improper tip credit calculations (v) any other alleged local, state or federal wage-and-hour violation, (vi) alleged discrimination, retaliation, harassment, or wrongful discharge, and (vii) any statutory, constitutional, regulatory, contractual and common law employment-related claims relating to Plaintiff's employment with

Defendant, including claims for wages, damages, restitution, equitable relief, or litigation costs; and (c) this release includes any and all of the following based on any of the matters released by the foregoing: penalties, liquidated damages, punitive damages, attorneys' fees, litigation costs, restitution, and equitable relief ("Plaintiff's Released Claims").  For the avoidance of doubt, this is a complete and general release of all possible claims to the maximum extent allowed under the law, including a release to all rights and claims under: Title VII of the Civil Rights Act of 1964; the Civil Rights Act of 1991; the Family and Medical Leave Act; the Pregnancy Discrimination Act of 1978; the Age Discrimination in Employment Act of 1967; the Americans with Disabilities Act of 1990; the Equal Pay Act of 1963; the Older Workers Benefit Protection Act of 1990; the Genetic Information Nondiscrimination Act of 2008; the Worker Adjustment and Retraining Notification Act of 1989; the Employee Retirement Income Security Act (including, but not limited to, claims for breach of fiduciary duty under ERISA); New York State Constitution, common law of New York, New York State Human Rights Law, New York Equal Pay Law, New York State Civil Rights Law, New York Off-duty Conduct Lawful Activities Discrimination Law, New York State Labor Relations Act, Article 23-A of the New York State Corrections Law, New York Whistleblower Statute, New York Family Leave Law, New York Minimum Wage Act, New York Wage and Hour Law, New York Wage Hour and Wage Payment Law, New York State Worker Adjustment and Retraining Notification Act, retaliation provisions of New York Workers' Compensation Law, the New York City Earned Sick and Safe Time Act.

3.     **Release Exclusions.**  The Release and Waiver of Rights and Claims in Section 2 excludes any claims arising after Plaintiff signs this General Release and any claims this General Release cannot waive, such as for unemployment or worker's compensation; any right to COBRA benefits or vested retirement benefits; any existing rights of defense and indemnity or liability insurance coverage; any claims arising after the effective date of this Agreement; and the right to enforce this Agreement.  Nothing in this Agreement limits Plaintiff's right to file a claim, give information, or participate in an investigation or proceeding with a government agency such as the SEC or OSHA under any law protecting such rights.  But Plaintiff does give up, however, any right to recover money or other personal benefit from CHEESECAKE (not a government agency) for any such claim or litigation, unless prohibited by law.

4.     **Other Agreements.**  Plaintiff also understands and agrees as follows:

(a)     Plaintiff is entering into this General Release, intending to be bound by its terms, knowingly, voluntarily, and with full knowledge of their significance.  Plaintiff has not been coerced, threatened, or intimidated into signing this General Release;

(b)     Plaintiff has been advised to consult with a lawyer of his or her choosing prior to signing this General Release and agreeing to be bound by its terms;

(c)     Plaintiff has consulted with a lawyer of his or her choosing prior to signing this General Release or has knowingly chosen not to do so;

(d)      Plaintiff has been given a reasonable amount of time of not less than twenty -one (21) days to consider this General Release.  Plaintiff further understands that Plaintiff shall have seven days following Plaintiff's signing of this Agreement to revoke that signature, in which case the provisions of this Agreement shall be of no force or effect.  Any revocation must be provided in writing and mailed or otherwise sent within this seven-day period.

(e)      Plaintiff is not otherwise entitled to the consideration described in this General Release; and

(f)      Plaintiff has not suffered any on-the-job injury for which Plaintiff has not already filed a workers' compensation claim.

*By my signature below, I affirm and acknowledge that I have read the foregoing General Release, that I have had sufficient time and opportunity to review and discuss it with my attorney, that I have had any questions answered to my satisfaction, that I fully understand and appreciate the meaning of its terms, and that I am voluntarily signing the General Release on the date indicated below, intending to be fully and legally bound by its terms.*

**FOR CHEESECAKE**

By: _____

Print Name: _____

Title: _____

Dated: _____

**FOR PLAINTIFF**

By: _____

Print Name: _John Guglielmo_

Dated: _7 / 23 / 19_